### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 13** |
| Jacqueline Williams, | ) | **Case No. 10 B 07121** |
| | ) | |
| Debtor. | ) | |

### AMENDED MEMORANDUM OF DECISION

This Chapter 13 case is before the court on competing requests by the trustee and the debtor.  The trustee seeks to convert the case to one under Chapter 7, asserting that the debtor has acted in bad faith by failing to disclose information about one of her assets.  In response, the debtor seeks to have the case dismissed, relying on § 1307(b) of the Bankruptcy Code (Title 11, U.S.C.).  The dispositive issue is whether bad faith is an exception to the right of dismissal under § 1307(b).  Although the reported decisions take different positions on the question, the better view is that, excepting only cases converted from another chapter, the right of dismissal under § 1307(b) is not limited.  Accordingly, the debtor's request to dismiss will be granted.

### Jurisdiction

Under 28 U.S.C. § 1334(a), the federal district courts have "original and exclusive jurisdiction" of all cases under the Bankruptcy Code, but 28 U.S.C. § 157(a) allows the district courts to refer these cases to the bankruptcy judges for their districts.  The District Court for the Northern District of Illinois has made such a reference of its bankruptcy cases. N.D. Ill. Internal Operating Procedure 15(a).  Under this reference, a bankruptcy judge has jurisdiction under 28 U.S.C. § 157(b)(1) to "hear and determine . . . all core proceedings arising under title 11, or arising in a case under title 11."  Proceedings regarding the dismissal or conversion of a Chapter 13 case are core proceedings.  28 U.S.C. § 157(b)(2)(A).

### Factual Background

Jacqueline Williams filed a petition for relief under Chapter 13 of the Bankruptcy Code in February 2010.  (Docket No. 1.)  In the statement of financial affairs that accompanied her petition, Williams reported that she and a decedent's estate were plaintiffs in a medical malpractice lawsuit pending in state court.  (*Id.*)  Williams, however, did not list this lawsuit among the property she was required to disclose in Schedule B accompanying her petition.  (*Id.*)

At the trustee's request, Williams filed an amended Schedule B on which she listed the malpractice claim—but assessed its value at zero.  (Docket No. 20.)  According to the trustee, Williams has refused to provide any other information about the lawsuit, such as its status, her chances of prevailing, or the likelihood of settlement.  As a result, the trustee says that she has been unable to make her own valuation of Williams' malpractice claim or determine whether it might allow unsecured creditors to recover more than the ten percent distribution proposed by Williams' Chapter 13 plan.

In May, the trustee filed a motion under § 1307(c) of the Bankruptcy Code, a provision that allows either dismissal or conversion of a Chapter 13 case.  The trustee based the motion in part on Williams' failure to produce information about the malpractice claim.  At a hearing on the motion, the trustee stated that the case should be converted to Chapter 7 rather than dismissed, since a trustee under that chapter could investigate and prosecute the malpractice claim for the benefit of Williams' creditors.  In response, Williams' counsel requested that the trustee's motion be resolved by dismissal, citing § 1307(b).[1]  The parties were afforded an opportunity to brief the question whether a debtor may obtain dismissal of a case under § 1307(b) despite a pending § 1307(c) motion alleging that the debtor has acted in bad faith.

---

[1] Because dismissal was an allowed result under the trustee's motion, the trustee's motion served to bring the issue of dismissal formally before the court, and so there was no need for the debtor to file a separate written motion requesting dismissal, as would normally be required by Federal Rules of Bankruptcy Procedure 1017(f)(2) and 9013.

### Conclusions of Law

The legal question raised here—the extent of a debtor's right to dismissal of a Chapter 13 case under § 1307(b)—has divided the courts. At its core, however, the question is a straightforward one of statutory construction, which can be resolved in three steps. First, the language of § 1307(b) gives debtors in unconverted Chapter 13 cases an unqualified right to dismissal. Second, a court may not modify a statute simply because the court believes a different version would implement good policy; any limitation on § 1307(b) would have to come from another statutory provision. And third, no statutory provision applicable here limits the right to dismissal under § 1307(b).

1. *The meaning of § 1307(b).* When courts are charged with interpreting statutory language, the starting point is the ordinary meaning of that language. "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Rain Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)). By its terms, § 1307(b) of the Bankruptcy Code applies to any unconverted Chapter 13 case (that is, any case that has not been converted to Chapter 13 from another chapter of the Code). Section 1307(b) states without equivocation that if the debtor requests dismissal of an unconverted Chapter 13 case, the court "shall" dismiss it:

> On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

11 U.S.C. § 1307(b). Given this direction, courts generally agree that § 1307(b) itself accords no discretion to deny a debtor's request to dismiss an unconverted Chapter 13 case. *See, e.g., Barbieri v. RAJ Acquisition Corp. (In re Barbieri)*, 199 F.3d 616, 619-21 (2d Cir. 1999); *In re Polly*, 392 B.R. 236, 239 (Bankr. N.D. Tex. 2008) (quoting *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (the "mandatory 'shall' . . . normally creates an

obligation impervious to judicial discretion")).[2]

Furthermore, if the meaning of § 1307(b) were not clear, it would be appropriate to consider the statute's legislative history to resolve any ambiguity. *See C.I.R. v. Tufts*, 461 U.S. 300, 315 (1983). The legislative reports dealing with § 1307(b) reinforce the understanding that no unstated exceptions limit a debtor's right to dismissal. The Senate Report accompanying the Bankruptcy Reform Act of 1978 states that § 1307(b) confirms "without qualification" the right "of a chapter 13 debtor . . . to have the chapter 13 case dismissed." S. Rep. No. 95-989, at 141 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5927. Similarly, the House Report states: "Subsection (b) *requires* the court, on request of the debtor, to dismiss the case if the case has not already been converted from chapter 7 or 11." H.R. Rep. No. 95-595, at 428 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6383-84 (emphasis added). In contrast, "[n]othing in the legislative history indicates that the court may exercise discretion when considering a debtor's motion to dismiss." *In re Patton*, 209 B.R. 98, 102 (Bankr. E.D. Tenn. 1997).

Consistent with the language and legislative history of § 1307(b), most reported decisions have held that Chapter 13 debtors have an absolute right to dismissal of an unconverted case.[3]

---

[2] As noted in *Polly*, there are only a handful of decisions holding that courts do have discretion to deny a § 1307(b) request. The outliers contrast the requirement under § 1307(b) that a debtor "request" dismissal with the lack of any such requirement for conversion. *See Polly*, 392 B.R. at 242-43. Because of this difference, so the argument goes, courts must have some discretion whether to grant the "request" for dismissal. *Id.* The argument is not well grounded. Section 1307(a) makes the debtor's right to convert applicable to all Chapter 13 cases, and so presents no reason for a debtor to "request" conversion from the court; by contrast, the right to dismissal under § 1307(b) applies only to previously unconverted Chapter 13 cases, and so requires a request by the debtor to allow the court to distinguish between converted and unconverted cases. For unconverted cases, though, § 1307(b) makes dismissal mandatory. *Polly*, 392 B.R. at 244 ("The fact that the court must order an end to a chapter 13 case . . . does not mean that . . . it may, contrary to the command of the statute, deny [dismissal].").

[3] *See Barbieri*, 199 F.3d at 619-21; *Beatty v. Traub (In re Beatty)*, 162 B.R. 853, 857-58 (B.A.P. 9th Cir. 1994); *Zeman v. Dulaney (In re Dulaney)*, 285 B.R. 10, 14-15 (D. Colo. 2002);

2. *The absence of judicial authority to amend statutory language.* Despite § 1307(b)'s language, however, a significant number of decisions hold that the right to dismissal is lost if the debtor acted in bad faith.[4] Nearly all of them express the concern that applying § 1307(b) according to its terms would give Chapter 13 debtors the opportunity to engage in bad faith with impunity. *See, e.g.*, *Molitor*, 76 F.3d at 220 (stating that the unlimited application of § 1307(b) would create an "escape hatch" that would "open up the bankruptcy courts to a myriad of potential abuses"); *Fonke*, 310 B.R. at 813 (stating that the unrestricted application of § 1307(b) would advantage "dishonest individuals who are misusing the system"); *Cobb*, 2000 WL 17840, at *3 (stating that the absolute right to dismiss "would encourage abuse of the bankruptcy system").

This policy concern is questionable. Applying § 1307(b) according to its terms does not

---

*In re Gillion*, 36 B.R. 901, 905 (E.D. Ark. 1983); *In re Hamlin*, No. 09-5272-8, 2010 WL 749809, at *4 (Bankr. E.D.N.C. Mar.1, 2010); *Polly*, 392 B.R. at 240-47; *In re Campbell*, No. 07-457, 2007 WL 4553596 (Bankr. N.D. W. Va. Dec. 18, 2007); *In re Hughes*, No. 04-40725, 2007 WL 7025843, at *3 (Bankr. S.D. Ga. Nov. 30, 2007); *In re Davis*, No. 06-1005, 2007 WL 1468681, at *2 (Bankr. M.D. Fla. May 16, 2007); *In re Neiman*, 257 B.R. 105, 109-10 (Bankr. S.D. Fla. 2001); *Patton*, 209 B.R. at 102; *In re Greenberg*, 200 B.R. 763, 768 (Bankr. S.D.N.Y. 1996); *In re Harper-Elder*, 184 B.R. 403, 405 (Bankr. D.D.C. 1995); *In re Sanders*, 100 B.R. 338, 340 (Bankr. S.D. Ohio 1989); *In re Looney*, 90 B.R. 217, 218 (Bankr. W.D. Va. 1988); *In re Rebeor*, 89 B.R. 314, 322 (Bankr. N.D.N.Y. 1988); *In re Turiace*, 41 B.R. 466, 466 (Bankr. D. Or. 1984); *In re Merritt*, 39 B.R. 462, 465 (Bankr. E.D. Pa. 1984); *In re Benediktsson*, 34 B.R. 349, 350-51 (Bankr. W.D. Wash. 1983); *In re Hearn*, 18 B.R. 605, 606-07 (Bankr. D. Neb. 1982); *see also In re Chapman*, 265 B.R. 796, 825 (Bankr. N.D. Ill. 2001); *In re Baines*, 263 B.R. 868, 873 (Bankr. S.D. Ill. 2001) (both citing *Barbieri*, 199 B.R. at 619-21, and stating in dicta that a Chapter 13 debtor has an absolute right to dismiss under § 1307(b)).

[4] *See Jacobsen v. Moser (In re Jacobsen)*, 609 F.3d 647, 660 (5th Cir. 2010); *Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 773-74 (9th Cir. 2008); *Molitor v. Edison (In re Molitor)*, 76 F.3d 218, 220 (8th Cir. 1996); *Simmons v. Cobb (In re Cobb)*, No. 99-3193, 2000 WL 17840, at *3 (E.D. La. Jan. 11, 2000); *Gaudet v. Kirshenbaum Inv. Co. (In re Gaudet)*, 132 B.R. 670, 676 (D.R.I. 1991); *In re Caola*, 422 B.R. 13, 20 (Bankr. D.N.J. 2010); *In re Armstrong*, 408 B.R. 559, 569-72 (Bankr. E.D.N.Y. 2009); *In re Norsworthy*, No. 05-15098, 2009 WL 6499238, at *1 (Bankr. N.D. Ga. May 27, 2009); *In re Chabot*, 411 B.R. 685, 700 (Bankr. D. Mont. 2009); *In re Letterse*, 397 B.R. 507, 512 (Bankr. S.D. Fla. 2008); *In re Fonke*, 310 B.R. 809, 813 (Bankr. S.D. Tex. 2004); *In re Johnson*, 228 B.R. 663, 668 (Bankr. N.D. Ill. 1999); *In re Howard*, 179 B.R. 7, 10 (Bankr. D.N.H. 1995); *In re Vieweg*, 80 B.R. 838, 841 (Bankr. E.D. Mich. 1987); *In re Gaudet*, 61 B.R 349, 350 (Bankr. D.R.I. 1986); *In re Powers*, 48 B.R. 120, 121 (Bankr. M.D. La. 1985); *In re Tatsis*, 72 B.R. 908, 910 (Bankr. W.D.N.C. 1987); *In re Jacobs*, 43 B.R. 971, 974-76 (Bankr. E.D.N.Y. 1984).

grant Chapter 13 debtors immunity for misconduct—bad faith conduct is subject to a range of judicial sanctions after dismissal, *see Polly*, 392 B.R. at 246, and in some instances can be the basis for a criminal prosecution, *see* 18 U.S.C. §§ 152, 158(d).  But questionable or not, a concern about abuse does not itself permit the courts to alter statutory provisions.  *See Barbieri*, 199 F.3d at 621 ("[O]ur concerns about abuse of the bankruptcy system do not license us to redraft the statute.").

Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992), provides a lesson about limits on the power of bankruptcy courts to engraft bad faith exceptions to provisions of the Code.  The issue in *Taylor* was whether a trustee could raise an untimely objection to an exemption claim that the debtor may have filed in bad faith.  Among other things, resolution of the issue depended on the interpretation of § 522(*l*) of Code, which treats an exemption claim as valid if not subject to timely objection.  The trustee advanced an interpretation that added a limitation to the language of § 522(*l*), so that its requirement for an objection would not apply to exemption claims filed in bad faith.  The trustee argued that "only a requirement of good faith" could prevent debtors from obtaining groundless exemptions.  *Id*. at 644.  The Supreme Court flatly rejected this proposal, holding that even if other statutory provisions did not effectively discourage bad-faith exemption claims, courts were bound by the unlimited language of the statute: "We have no authority to limit the application of § 522(*l*) to exemptions claimed in good faith."  *Id*. at 645.

The principle that courts lack the power to amend the Bankruptcy Code on their own accord reflects a reasonable caution, recognizing that Code provisions implement Congressional policies that courts must enforce.  The effect of § 1307(b) is to support the long-standing voluntary nature of Chapter 13.  *See Barbieri*, 199 F.3d at 620; *Gillion*, 36 B.R. at 905; *Harper-Elder*, 184 B.R. at 408.  Under the Bankruptcy Act, a court could not convert a case from Chapter XIII to Chapter VII without the debtor's consent.  *See Harper-Elder*, 184 B.R. at 408.  Although consent is no longer required, the debtor's "guaranteed right of dis-

6

missal" preserves the "freedom to choose between liquidation and debt adjustment." *Id*.
(quoting *Hearn*, 18 B.R. at 606). Thus, Congress likely intended that under § 1307(b), "a
debtor should be afforded the uninhibited freedom to avoid liquidation if he elects to do so
before the conversion of his Chapter 13 proceeding." *Id*. (quoting *Gillion*, 36 B.R. at 905).[5]

Of course, if Congress enacts a statutory provision with limitations, the courts must en-
force them. The Supreme Court's decision in *Marrama v. Citizens Bank of Massachusetts*,
549 U.S. 367 (2007), provides an example. *Marrama* interpreted § 706(a), a provision that
grants a right of conversion to Chapter 7 debtors using language similar to that of § 1307(b).[6]
*Marrama* held that the right of conversion is lost if the debtor has engaged in bad faith. *Id*. at
371. This holding, though, was not based on a judicial power to amend statutes but rather on
the separate eligibility limitation of § 706(d): "Notwithstanding any other provision of this sec-
tion, a case may not be converted to a case under another chapter of this title unless the
debtor may be a debtor under such chapter."

The eligibility limitation in § 706(d) was central to *Marrama*'s reasoning. The Court
first noted that § 706(d) "expressly conditioned [the debtor's] right to convert on his ability to
qualify as a 'debtor' under Chapter 13." *Id*. at 372. The Court then observed that § 1307(c)
had been interpreted to allow both conversion and dismissal of Chapter 13 cases based on the
debtor's bad faith. *Id*. at 373. Finally, a combination of the eligibility limitation imposed by
§ 706(d) and the potential for a bad faith conversion or dismissal under § 1307(c) led the
Court to find that bad-faith filers in Chapter 7 were ineligible for Chapter 13:

---

[5] Indeed, if courts could fashion remedies for bad faith that contradict provisions of the
Bankruptcy Code, there is little limit to the Congressional policies that could be undone. For
example, a court that found that a debtor had understated income in bad faith might issue an
order to continue the Chapter 13 case involuntarily, denying any request from the debtor for
dismissal under § 1307(b). This result would require the debtor to pay the correct amount of
income to creditors, but it would eviscerate the exclusively voluntary nature of Chapter 13.

[6] Section 706(a) provides: "The debtor may convert a case under this chapter to a case
under [another chapter of the Code] at any time, if the case has not been [previously been]
converted . . . . Any waiver of the right to convert a case under this subsection is unenforce-
able."

> In practical effect, a ruling that an individual's Chapter 13 case should be dis-
> missed or converted to Chapter 7 because of prepetition bad-faith conduct, in-
> cluding fraudulent acts committed in an earlier Chapter 7 proceeding, is tanta-
> mount to a ruling that the individual does not qualify as a debtor under Chapter
> 13.

*Id*. at 373-74.  Accordingly, the Court held, it is "[t]he text of § 706(d)" that provides "authority

for the denial of [a debtor's] motion to convert."  *Id.* at 374.[7]

Without a separate statutory provision limiting § 1307(b) in the same way that § 706(d)

limits § 706(a), the right that § 1307(b) accords debtors to obtain dismissal of unconverted

cases cannot be limited.

3. *The absence of statutory limits on § 1307(b).*

Section 1307(b) is not subject to an eligibility limitation like the one in § 706(d).  The

decisions finding a bad-faith exception to § 1307(b) cite instead two other potential sources for

a statutory limitation, § 1307(c) and § 105(a).[8]  Neither, however, is applicable.

A. *The effect of § 1307(c).*  Section 1307(c) states in part that on the request of a

"party in interest," "the court may convert a case under this chapter to a case under chapter 7

of this title, or may dismiss a case under this chapter, whichever is in the best interests of

creditors and the estate, for cause."  The subsection goes on to provide a non-exclusive list of

factors that may establish cause.  Bad faith by debtors is not among these factors, but, as *Mar-*

*rama* noted, courts have agreed that bad faith may serve as a cause for relief under § 1307(c).

---

[7] The Court concluded its analysis by holding that the provision of § 706(a) rendering
waivers of the right to convert ineffective did not contradict the holding that bad faith ren-
dered Chapter 7 debtors ineligible for Chapter 13, since "[n]othing in the text of either § 706
or § 1307(c) (or the legislative history of either provision) limits the authority of the court to
take appropriate action in response to fraudulent conduct by the atypical litigant *who has
demonstrated that he is not entitled to the relief available to the typical debtor.*"  *Id.* at 374-75
(emphasis added).  This statement reflects the Court's determination that §§ 706 and 1307(c)
combine to make bad-faith filers ineligible for Chapter 13 relief.

[8] Another potential basis for limiting § 1307(b) is the requirement of § 1307(e) that a
court "shall" convert or dismiss any Chapter 13 case in which the debtor does not timely file
required income tax information.  The trustee, however, has not argued for relief under
§ 1307(e).

549 U.S. at 367, 373.  So if there are competing requests to convert under § 1307(c) and to dismiss under § 1307(b)—as there are here—the two subsections necessarily conflict, and the court must choose one provision or the other.[9]

The choice is determined by a basic rule of construction: the more specific provision should govern the more general.  *See Busic v. United States*, 446 U.S. 398, 406 (1980) ("[A] more specific statute will be given precedence over a more general one, regardless of their temporal sequence."); *Berkson v. Gulevsky (In re Gulevsky)*, 362 F.3d 961, 963 (7th Cir. 2004) ("[W]hen both a specific and a general provision govern a situation, the specific one controls.").

The application of this rule to the conflict between § 1307(b) and § 1307(c) is clear.  Section 1307(c) applies generally—to all motions seeking to convert or dismiss a Chapter 13 case filed by any "party in interest," including all Chapter 13 debtors.[10]  Subsection 1307(b), on the other hand, applies specifically—to requests to dismiss filed by debtors whose cases have not been converted.  Thus, when a debtor requests dismissal of an unconverted Chapter 13 case, § 1307(b) is the governing provision.  Indeed, courts agree almost unanimously that if a

---

[9] As the Second Circuit explained in *Barbieri*, the conflict makes it impossible to give effect to both of the subsections:

> It is true that if a court grants a debtor's motion to dismiss under § 1307(b), the court will be deprived of the option, afforded by § 1307(c), of converting the case for cause.  But that is no more significant than the fact that an order granting a creditor's motion to convert under § 1307(c) would foreclose dismissal under § 1307(b).  "In the event of competing motions filed under subsections (b) and (c), one subsection will inevitably prevail at the expense of [the other]." *Patton*, 209 B.R. at 100.  Accordingly, the assertion that an absolute right under § 1307(b) would nullify § 1307(c) "carries no weight since either party could make the same argument.  *Id*. at 104.

*Barbieri*, 199 F.3d at 620.

[10] A debtor, of course, is a "party in interest." *See Adair v. Sherman*, 230 F.3d 890, 894 n.3 (7th Cir. 2000) (citing *In re FBN Food Servs.*, 82 F.3d 1387, 1391 (7th Cir. 1996)) ("Parties in interest include not only the debtor, but anyone who has a legally protected interest that could be affected by a bankruptcy proceeding.").

debtor requests dismissal under § 1307(b) in response to a § 1307(c) motion seeking conversion for any cause other than bad faith, § 1307(b) governs and the debtor's request to dismiss must be granted. *See, e.g., Dulaney*, 285 B.R. at 14-15 (granting a debtor's § 1307(b) dismissal request despite a pending § 1307(c) motion based on the debtor's undue delay in confirming a Chapter 13 plan); *Johnson*, 228 B.R. at 668 ("Opinions that allow motions to convert to Chapter 7 to prevail over motions to dismiss voluntarily usually have required some form of bad faith or abuse.").[11]

When the cause is bad faith, however, several decisions hold that § 1307(c) trumps § 1307(b). These decisions refer to the purpose of bankruptcy relief—"to afford the honest but unfortunate debtor a fresh start, not to shield those who abuse the bankruptcy process in order to avoid paying their debts," *Molitor*, 76 F.3d at 220—and hold that allowing a debtor "unfettered power to prevent conversion under § 1307(c) by simply filing a motion to dismiss" would "render subsection (c) a nullity." *Gaudet*, 132 B.R. at 676; *see also Molitor*, 76 F.3d at 220; *Johnson*, 228 B.R. at 668; *Howard*, 179 B.R. at 10; *Vieweg*, 80 B.R. at 841.

No rule of statutory construction supports this result. Nothing in the text of § 1307(c) provides a bad faith exception to a debtor's right to dismiss under § 1307(b)—bad faith is not even listed as a cause for § 1307(c) relief—and the language of the two provisions offers no reason to apply the general provisions of § 1307(c) over the specific right to dismissal of § 1307(b). Declining to find a bad-faith exception in § 1307(b) does not nullify § 1307(c) but merely allows § 1307(b) to govern the limited matters within the scope of its specific coverage.

B. *The effect of § 105(a).* Section 105(a), the other provision cited in support of the bad-faith exception to § 1307(b), grants courts the power to take "any action . . . necessary

---

[11] Only one decision appears to hold that a § 1307(c) motion to convert acts as a limitation on a debtor's right to dismiss, no matter what ground for conversion is asserted. *See Tatsis*, 72 B.R. at 909-10 (debtor's request to dismiss denied because of an earlier filed a motion to convert alleging debt in excess of the eligibility limits for Chapter 13). This decision does not address the general/specific rule of statutory construction.

or appropriate . . . to prevent an abuse of process." 11 U.S.C. § 105(a).  Section 105(a), how-

ever, cannot be employed to contradict another provision of the Code.  "[T]he power con-

ferred by § 105(a) is one to implement rather than override." *In re Kmart Corp.*, 359 F.3d

866, 871 (7th Cir. 2004).  This limitation on the scope of § 105(a) applies even if the result

would be reasonable or desirable.  *Id.* (quoting *In re Chicago, Milwaukee, St. Paul & Pacific*

*R.R.*, 791 F.2d 524, 528 (7th Cir. 1986) ("The fact that a bankruptcy proceeding is equitable

does not give the judge a free-floating discretion to redistribute rights in accordance with his

personal view of justice and fairness, however enlightened those views may be.")).[12]  Because a

bad-faith exception would directly conflict with § 1307(b)'s requirement that courts "shall"

dismiss a Chapter 13 case upon the debtor's request, it falls beyond the scope of any authority

conferred by § 105(a).

    Although the *Marrama* decision is sometimes cited as support for using § 105(a) to

create a bad-faith exception to § 1307(b),[13] the decision actually is consistent with implement-

ing, rather than overriding, provisions of the Code.  In *Marrama*, the Supreme Court said that

§ 105(a) was "adequate to authorize an immediate denial of a motion to convert filed under

§ 706 *in lieu of a conversion order that merely postpones the allowance of equivalent relief.*"

549 U.S. at 375 (emphasis added).  This observation simply reflects the Court's holding, dis-

---

[12] The Second Circuit recently enforced the same limitation on the use of § 105(a):

> [T]he equitable power conferred on a bankruptcy court by 11 U.S.C. § 105 is
> the power to exercise equity in carrying out the provisions of the Bankruptcy
> Code, rather than to further the purposes of the Code generally, or otherwise to
> do the right thing. This limitation suggests that an exercise of section 105 power
> be tied to another Bankruptcy Code section and not merely to a general bank-
> ruptcy concept or objective.

*Solow v. Kalikow (In re Kalikow)*, 602 F.3d 82, 97 (2d Cir. 2010) (internal quotations and cita-
tions omitted).

[13] *See Jacobsen*, 609 F.3d at 660-61; *Rosson*, 545 F.3d at 773; *Carola*, 422 B.R. at 20; *Arm-
strong*, 408 B.R. at 569; *Letterse*, 397 B.R. at 20; *Norsworthy*, 2009 WL 6499238, at *1 & n.1;
*Chabot*, 411 B.R. at 700 (all interpreting *Marrama* as permitting courts to use § 105(a) to fash-
ion a bad-faith exception).

cussed above, that Chapter 7 debtors who have engaged in bad faith are ineligible for Chapter 13 relief, and so under § 706(d) those debtors have no right to convert their cases to Chapter 13.   The Court invoked § 105(a) as a vehicle to implement § 706(d) and avoid the "procedural anomaly" of permitting Chapter 7 debtors to convert their cases to a chapter for which they were ineligible.  *Id*. at 368, 375.  Section 706(d)—not § 105(a)—was the source of the eligibility requirement for conversion.  *Id*. at 373-74.

**Conclusion**

Because the language of § 1307(b) accords debtors an unlimited right to dismissal of unconverted Chapter 13 cases, and because that right is not limited by judicial discretion or other provisions of the Bankruptcy Code, Williams' request to dismiss her Chapter 13 case must be granted in response to trustee's motion.

Dated: August 18, 2010

Eugene R. Wedoff
United States Bankruptcy Judge